UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Edilberto LEAL VALENZUELA,

Petitioner,

v.

John MATTOS, *et al.*,

Respondents.

Case No. 2:26-cv-02239-ART-NJK

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 8)

Petitioner Edilberto Leal Valenzuela has been detained in ICE custody since July 8, 2026. (ECF No. 8 at 3.) He brings this habeas petition to challenge his detention. The Court now GRANTS the petition for habeas corpus and orders Respondents to release Petitioner.

## I. BACKGROUND

Mr. Leal Valenzuela is a 49-year-old native and citizen of Mexico. (ECF No. 8 at 3.) According to the Form I-213, the date of Mr. Leal Valenzuela's entry into the United States is unknown but occurred at some point before 2011. (ECF No. 8-2 at 3.) In that year, he was arrested in Arizona by U.S. Border Patrol ("USBP"), processed for expedited removal, and removed from the country. (*Id.*) Mr. Leal Valenzuela disputes whether this removal was executed pursuant to a valid and final removal order. (ECF No. 8 at 5.)

Mr. Leal Valenzuela then re-entered the U.S. at an unknown time. In March 2013, USBP encountered him at the border, reinstated his (disputed) 2011 removal order, and again removed him. (ECF No. 8-2 at 4.) This cycle played out once more in April 2013: Mr. Leal Valenzuela re-entered the U.S., was arrested by USBP, and was removed per a reinstated removal order predicated upon the

original 2011 removal order. (*Id.*; ECF No. 8-4.)

The Form I-213 contains no information about Mr. Leal Valenzuela's whereabouts from 2013 until 2026, meaning at some time during those years, he re-entered the U.S. for a fourth time. (ECF No. 8-2 at 4.) On July 3, 2026, he was arrested in Las Vegas for a domestic violence incident. (*Id.*) He pleaded guilty to one count of misdemeanor battery domestic violence. (ECF No. 8 at 6.) The next day, on July 8, he was transferred from the Clark County Detention Center into ICE custody. (*Id.*) Respondents decided to process him as a reinstated removal case, issued a Form I-205 warrant for his removal, and completed a Form I-871 order reinstating the disputed 2011 removal order. (*Id.*; ECF Nos. 8-1; 8-4.) The petition states that Mr. Leal Valenzuela also received a reasonable fear interview on July 8, but that the outcome of that interview is unclear. (ECF No. 8 at 6.) He has been in ICE detention ever since.

From detention, Mr. Leal Valenzuela filed a pro se habeas petition. (ECF No. 1.) The Court appointed him counsel, ordered that he not be removed absent leave of the Court, and ordered Respondents to provide certain standard documents relevant to his detention, including any warrant, initial custody determination, and notice to appear. (ECF No. 3.) He then filed the present amended petition. (ECF No. 8.) He has also sought judicial review of the reinstated removal order and, in September 2026, the Ninth Circuit issued a temporary stay of that order. (ECF No. 17 at 10.)

**II. LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted

to a petitioner who demonstrates that they are in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001); *Hamdi*, 542 U.S. at 525 (explaining that habeas review "remain[s] a critical check on the Executive, ensuring that it does not detain individuals except in accordance with the law").

As such, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003). The Court rejects Respondents' contrary argument—which makes up the bulk of their response (ECF No. 17 at 5-9)—that 8 U.S.C. §§ 1252(g) and 1252(b)(9) strip the Court of jurisdiction over Mr. Leal Valenzuela's petition. Although Respondents persistently raise this issue in habeas proceedings in this district, their reading of these provisions has been thoroughly and repeatedly rejected. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 293-95 (2018) (explaining that the jurisdictional bar in these provisions on reviewing claims "arising from" removal proceedings should not be construed so broadly as to bar jurisdiction over *all* claims by someone with a final removal order); *Ibarra-Perez v. United States*, 154 F.4th 989, 995-1000 (9th Cir. 2025); *Zarate v. Blanche*, No.: 2:26-cv-00320-GMN-MDC, 2026 WL 1005872, at *2 (D. Nev. Apr. 14, 2026) (collecting cases). While those statutes impact the Court's authority to hear challenges to removal decisions, Mr. Leal Valenzuela's core argument here is that the defective process underlying the reinstatement of the 2011 removal order renders his *detention* unlawful. (ECF No. 18 at 3.) The Court thus proceeds to review the amended petition on its merits.

## III. DISCUSSION

Mr. Leal Valenzuela argues that (1) his detention violates his procedural due process rights and 8 U.S.C. § 1231(a)(5) because Respondents failed to validly

execute several documents required to detain him, including the Form I-871 reinstating the disputed 2011 removal order and the Form I-205 warrant; and (2) his continued detention violates his substantive due process rights. (ECF No. 8.) Setting aside the above failed jurisdictional argument, Respondents' only counter is that Mr. Leal Valenzuela's detention is lawful under § 1231 and has not been unconstitutionally prolonged. (ECF No. 17 at 9-10.)

**A. From the outset, Mr. Leal Valenzuela's detention violated 8 U.S.C. § 1231(a)(5) and procedural due process.**

The Fifth Amendment imposes procedural "constraints on governmental decisions which deprive individuals of" their liberty. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1158 (D. Nev. 2025) ("Noncitizen detainees charged with being in the U.S. illegally are entitled to procedural due process."). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether governmental action violates due process, courts consider three distinct factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)). Courts apply the *Mathews* test to evaluate whether immigration detention violates due process. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (assuming without deciding that *Mathews* applies in the immigration context).

Determining which specific procedures are constitutionally required to detain a particular petitioner depends on first identifying which immigration

statute authorizes their detention. There are four statutes that govern noncitizen detention: 8 U.S.C. §§ 1226(a), 1226(c), 1225(b), and 1231(a). *Rodriguez Diaz*, 53 F.4th at 1196-98 (providing an overview of this scheme). Respondents argue that Mr. Leal Valenzuela's detention is authorized by 8 U.S.C. § 1231(a), which governs the detention of noncitizens who are subject to final removal orders. *See* 8 U.S.C. § 1231(a); *Rodriguez Diaz*, 53 F.4th at 1197-98 (explaining the principles underpinning § 1231). But because § 1231 requires a final removal order, the provision "does not—and cannot—authorize the detention of a noncitizen 'during the pendency of [their] administrative or judicial [immigration] proceedings.'" *Rosas-Villegas v. Blanche*, No. 2:26-cv-01177-RFB-EJY, 2026 WL 1786485, at *2 (D. Nev. June 22, 2026) (quoting *Avilez v. Garland*, 69 F.4th 525, 530 (9th Cir. 2023)). And a removal order is not considered final, for § 1231 purposes, where removal has been stayed pending review by a court of appeals. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008) (holding "that § 1231(a) does not provide authority to detain an alien whose removal order is administratively final, but whose removal has been stayed by a court of appeals pending its disposition of [a] petition for review"). In those circumstances, detention of a noncitizen challenging their removal order is authorized instead by § 1226(a). *Id.*

Respondents rely upon the government's reinstatement authority under § 1231(a)(5) to assert that Mr. Leal Valenzuela's detention is lawful based on the original 2011 removal order. But Mr. Leal Valenzuela argues that Respondents cannot rely upon the 2011 removal order to detain him because they have failed to produce that document or otherwise verify its existence, necessarily calling into question the validity of any reinstated removal order predicated upon the disputed original. (ECF No. 8 at 8, 10-13.) By this argument, the absence of a valid final removal order suggests that, all along in these proceedings, the only lawful basis for Mr. Leal Valenzuela's detention has been § 1226(a). *See Prieto-Romero*, 534 F.3d at 1062 ("Because Prieto–Romero filed a petition for review and

[the Ninth Circuit] entered a stay, his detention is governed by § 1226(a); only if we enter a final order denying his petition for review will the statutory source of the Attorney General's detention authority shift from § 1226(a) to § 1231(a).").

The Court agrees with Mr. Leal Valenzuela that Respondents' failure to produce the 2011 removal order poses a problem. Section 1231(a)(5) provides that where a noncitizen "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date." The Ninth Circuit has made clear that in these circumstances, the original removal order is not "automatically reinstated by operation of law." *Lin v. Gonzales*, 473 F.3d 979, 982-83 (9th Cir. 2007). Rather, to reinstate a removal order, the government must conform to the requirements of 8 C.F.R. § 241.8, which is § 1231(a)(5)'s implementing regulation. *Id.* Section 241.8(a) "requires that before the prior order can be reinstated, the immigration officer must (1) obtain the prior order related to the alien, (2) confirm that the alien under consideration is the same alien who was previously removed or voluntarily departed, and (3) confirm that the alien unlawfully reentered the United States." *Id.* at 983. The immigration officer must also provide the noncitizen with written notice of the reinstatement determination and with an opportunity to contest that determination. 8 C.F.R. § 241.8(b). "Only if the requirements of 8 C.F.R. § 241.8(a) and (b) have been satisfied is the alien removable under the previous order." *Lin*, 473 F.3d at 983; 8 C.F.R. § 241.8(c).

The regulation is thus clear: reinstating a prior removal order requires "obtain[ing]" the original, 8 C.F.R. § 241.8(a), and without it, the reinstatement effort cannot proceed. In this case, the record contains the Form I-205 warrant for Mr. Leal Valenzuela's removal (ECF No. 8-1), the Form I-213 (ECF No. 8-2), and two Form I-871s from 2013 and 2026 purporting to reinstate the 2011 removal order (ECF Nos. 8-3. 8-4). But although the Court initially ordered Respondents to produce "any . . . records [they] rely on to justify Petitioner's

detention" (ECF No. 3 at 3), Respondents did not produce the 2011 removal order. Given that their entire argument and basis for seeking to remove Mr. Leal Valenzuela from this country rests on this particular document, the failure to produce it is a glaring oversight. Yet Respondents offer no explanation for its absence, thereby conceding the issue. *See, e.g.*, *Garcia Cortez v. Blanche*, No. 2:26-cv-01733-ART-DJA, 2026 WL 2824638, at *3 (D. Nev. Sept. 21, 2026); *cf. United States v. Orozco*, 858 F.3d 1204, 1210 (9th Cir. 2017) ("[T]he U.S. Attorney waived [an] argument by failing to address it in his answering brief."); LR 7-2(d) (stating that failure to file points and authorities in response to a motion constitutes consent to granting the motion). Respondents' only argument as to the merits of the petition is that Mr. Leal Valenzuela's detention has not crossed the threshold into unconstitutionally prolonged territory. (ECF No. 17 at 1, 9-10); *see Zadvydas*, 533 U.S. at 701 (holding that the presumptive constitutional limit to detention after the § 1231 removal period has ended is six months). But Mr. Leal Valenzuela does not contest the length of his detention; rather, he claims that the statutory and constitutional violation results from the procedural insufficiencies and arbitrariness of his detention. (ECF No. 8.)

"Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (finding that the BIA violated its own internal procedures). The Court will not sua sponte infer in Respondents' favor that the 2011 removal order exists and was handled consistent with 8 C.F.R. § 241.8(a)'s requirements. Instead, with no evidence to the contrary, the Court must conclude that Respondents did not first obtain an original removal order before executing a reinstated removal order against Mr. Leal Valenzuela, thus violating the governing regulations and statutory framework. *Garcia v. Mattos*, 2:26-cv-01205-RFB-BNW, 2026 WL 1972386, at *8 (D. Nev. July 8, 2026) (finding that the government's failure to produce certain documents required to authorize detention "is a concession that [the petitioner]

was not afforded th[at] procedure[]"); *Nolasco Gaitan v. Blanche*, No. 2:26-cv-01839-ART-EJY, 2026 WL 3217105, at *3 (D. Nev. Oct. 27, 2026) (same). This conclusion is further supported by the discrepancies evident on the face of the reinstated removal orders that did make it into the record. The first, from 2013, states that Mr. Leal Valenzuela was "subject to a prior order of . . . removal entered on July 26, 2011 at Tucson, Arizona." (ECF No. 8-4.) The second, from 2026, contains different information: it states that the prior order was "entered on July 27, 2011 at Florence, Arizona." (ECF No. 8-3.) Though impossible to fully explain this discrepancy on the present record, it is clear to the Court that had the two executing officers, 13 years apart, been referencing the same original removal order, as required by 8 C.F.R. § 241.8, these records would be consistent.

The Court stresses that this is not merely an administrative technicality: by "bar[ring] relitigation of the merits of the reinstated removal order," *Villa-Anguiano v. Holder*, 727 F.3d 873, 877 (9th Cir. 2013), the reinstatement process permits immigration officials to short-circuit the ordinary proceedings on the assumption that the noncitizen has already had the opportunity to be fully heard regarding the constitutionality of their removal. Due to the expedited nature of this process, the statute permits—and perhaps even encourages—immigration officials to proceed with caution to ensure that constitutional or statutory violations do not occur: "[p]articularly when there is any question about whether the requirements of § 241.8 have been satisfied, and even when they have been, an ICE officer may decide to forgo reinstatement of a prior order of removal in favor of initiating new removal proceedings." *Id.* Here, as soon as it became clear that the cornerstone of the § 241.8(a) procedure was missing, Respondents could have erred on the side of constitutional caution by initiating removal proceedings anew. Instead, they plowed ahead even though doing so was at odds with § 241.8's clear instructions.

Additional procedural violations flow from the fact that because Mr. Leal

Valenzuela was not lawfully detained under § 1231, he is necessarily detained under § 1226(a). *Prieto-Romero*, 534 F.3d at 1059. Section 1226(a) affords its own set of "substantial procedural protections," *Rodriguez Diaz*, 53 F.4th at 1196, which "include, but are not limited to, four key procedures for the purposes of this analysis: (1) service of a notice to appear, which provides critical context as to the basis for detention; (2) any arrest and custody under this provision must be pursuant to a lawfully executed administrative warrant; (3) at the outset of detention, a noncitizen detained under this provision receives an initial custody determination by the agency; and (4) the noncitizen then has an ability to appeal said custody determination—i.e., receive a custody redetermination (bond) hearing before an immigration judge ("IJ")." *Rios-Rodriguez v. Blanche*, No. 2:26-cv-02117-RFB-MDC, 2026 WL 2280924, at *4 (D. Nev. Aug. 7, 2026) (citing *Rodriguez Diaz*, 53 F.4th at 1201–02). In this case, it is uncontested that Mr. Leal Valenzuela has not received to date an initial custody hearing or a bond hearing before an immigration judge. (ECF No. 8 at 17.) Denial of such procedures required by § 1226(a) can amount to a procedural due process violation under the *Mathews* framework. *See, e.g.*, *Alves v. Blanche*, No. 2:26-cv-01853-ART-BNW, 2026 WL 3181504, at *4-6 (D. Nev. Oct. 23, 2026); *Nolasco Gaitan*, 2026 WL 3217105, at *6. But because the Court grants Mr. Leal Valenzuela relief on the above grounds, it need not fully address the rest of his arguments. *See Alves*, 2026 WL 3181504, at *5 (granting relief on one ground and declining to analyze the petitioner's remaining arguments).

**B. The appropriate remedy is release.**

Having established a constitutional violation, the Court next must determine what relief must be afforded. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). Courts in this circuit have repeatedly found that immediate release is warranted where a petitioner is denied pre-detention

procedure required by statute or constitutional due process. *See Alves*, 2026 WL 3181504, at *6-7 (ordering release where insufficient pre-deprivation process was provided); *Garcia v. Mattos*, 2:26-cv-01205-RFB-BNW, 2026 WL 1972386, at *8 (D. Nev. July 8, 2026) (same); *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.,* 2:26-cv-02548-JHC, 2026 WL 2686824 (W.D. Wash. Sept 14, 2026) (same); *Rodriguez Rodriguez v. Knight*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (same). The Court thus finds that Mr. Leal Valenzuela's immediate release is the correct means of remedying the violation here.

Courts in this district have also found it necessary to adopt additional equitable remedies to ensure that Respondents provide due process moving forward. *See, e.g., Jimenez Gomez v. Dep't of Homeland Sec.*, No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2 (D. Nev. Apr. 29, 2026) (collecting examples showing that "[a]dmonishment is necessary because Respondents are repeatedly—and increasingly—violating this Court's orders")*; Rios-Rodriguez*, 2026 WL 2280924, at *11 n.11 (same); *Maren Marejon v. Mattos*, No. 2:26-cv-00427-GMN-BNW, 2026 WL 3026483, at *8 (D. Nev. Oct. 8, 2026) (same); *see also Torres v. Blanche*, No. 5:26-cv-04209-KS, 2026 WL 2828638, at *6 (C.D. Cal. Sept. 21, 2026) (ordering similar equitable relief outside this district). Under the Court's broad and flexible power to fashion equitable relief in habeas cases, *see Lujan*, 734 F.3d at 933, it finds it justified to require that, in the event Respondents seek to re-detain Mr. Leal Valenzuela under § 1226(a), they must provide him with a pre-deprivation bond hearing wherein the government must prove, by clear and convincing evidence, that the detainee presents a flight risk or a danger to the community such that detention is warranted. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024) (citation omitted) (affirming a district court's remedy under the Due Process Clause requiring the government to "show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community"); *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1003 (9th

Cir. 2025) (describing *Martinez*). While the Court does not take this step lightly, it finds it is necessary due to Respondents' violations of the law and petitioners' rights in this case and others.

## IV. CONCLUSION

It is therefore ordered that the amended petition (ECF No. 8) is GRANTED.

It is further ORDERED that Respondents must RELEASE Petitioner from detention ON PERSONAL RECOGNIZANCE on November 9, 2026, between 10am and 1pm. Counsel for Petitioner (or their designee/agent) will be permitted to wait in the public areas of the detention center during the release window.

It is further ORDERED that Respondents are PROHIBITED from imposing release conditions that have not been established as reasonable by clear and convincing evidence at a pre-deprivation hearing.

It is further ORDERED that Respondents must ensure that Petitioner's personal property has been returned.

It is further ORDERED that the parties shall file a joint notice of compliance with this order by November 10, 2026.

The Court has reviewed Petitioner's motion for leave to proceed in forma pauperis (ECF No. 9) and finds good cause not to require the filing fee to be paid in this case. It is therefore further ORDERED that Petitioner's motion for leave to proceed in forma pauperis (ECF No. 9) is GRANTED.

Dated this 6th day of November 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE